THE PEOPLE v. EDWARD WAGNER ET AL. THE PEOPLE
v. ALBERT H. BARIE ET AL. THE PEOPLE v.
FRANK WITTELSBERGER ET AL.

[Three Cases.]

*Municipal corporations—Ordinance regulating the manufacture
and sale of bread—Police power.*

1. An ordinance of the city of Detroit providing that all bread,
   manufactured by the bakers of the city for sale, shall be made
   into loaves of one, two, and four pounds, and no other, avoir-
   dupois weight, and forbidding them to sell or expose for sale
   any bread that shall be deficient in weight, is sustained as
   within the provisions of the charter empowering the common
   council " to direct and regulate the weight and quantity of
   bread, the size of the loaf, and the inspecting thereof."

2. The following general propositions are summarized from the
   opinion of Mr. Justice McGRATH:

   *a*—The constitutional provisions relating to the title of laws
   passed by the Legislature do not apply to city ordinances;
   citing *People v. Hanrahan*, 75 Mich. 611.

   *b*—It has been held in Massachusetts that no recovery could
   be had for the price and value of shingles which were not of
   the statutory dimensions (*Wheeler v. Russell*, 17 Mass. 258), or
   for oats and meal when sold by the bag, the statute requiring
   such sale to be by the bushel (*Eaton v. Kegan*, 114 Mass. 433).

   *c*—The State may institute any reasonable preventive remedy
   when the frequency of the frauds aimed at, or the difficulty
   experienced by individuals in circumventing them, is so great
   that no other means will prove efficacious. Tied. Lim. § 89.

   *d*—The police power of a state is not confined to regulations
   looking to the preservation of life, health, good order, and
   decency, and laws providing for the detection and prevention
   of imposition and fraud, as a general rule, are free from con-
   stitutional objection. Tied. Lim. § 89.

*Certiorari* to recorder's court of Detroit. (Chambers, J.)
Submitted on briefs June 20, 1891. Decided July 28,
1891.

Defendants were convicted of a violation of an ordinance of the city of Detroit providing a uniform weight of a loaf of bread. Convictions affirmed. The facts are stated in the opinion.

*William Look* and *H. F. Chipman,* for defendants.

*Charles W. Casgrain* and *Charles S. McDonald,* for the people.

McGrath, J. These cases come from the recorder's court of the city of Detroit by writ of *certiorari,* defendants having been convicted 'of a violation of a city ordinance. By stipulation, the cases come up on one record.

Defendants are bakers, and are charged with making for sale, selling, and offering for sale bread that was deficient in weight under the ordinance.

The ordinance is entitled, "An ordinance relative to the manufacture and sale of bread." The ordinance provides that it shall not be lawful for any person to carry on the trade or business of baker without first having obtained from the common council a permit for that purpose. It next prescribes how the permit shall be obtained, and that the clerk shall keep a record of the permits granted. It then concludes as follows:

"Sec. 4. All bread of every description, manufactured by the bakers of this city for sale, shall be made of good and wholesome flour or meal, into loaves of one pound, two pounds, and four pounds, and no other, avoirdupois weight; and no baker shall make for sale, or shall sell or expose for sale, any bread that shall be deficient in weight, according to the requisitions prescribed in the preceding section of this chapter: *Provided,* always, that such deficiency in the weight of such bread shall be ascertained by the sealer of weights and measures, by weighing, or causing to be weighed in his presence, within eight hours after the same shall have

been baked, sold, or exposed for sale:  *And provided, further*, that whenever any allowance in the weight shall be claimed on account of any bread having been baked, sold, or exposed for sale more than eight hours, as aforesaid, the burden of proof in respect to the time when the same shall have been baked, sold, or exposed for sale shall devolve upon the defendant or baker of such bread.

"SEC. 5.  The sealer of weights and measures, under the direction of the chief of police, shall be inspector of bread; and it shall be his duty, and he is hereby authorized and required, from time to time, and not less than once in each month, at all seasonable hours, to enter into and inspect and examine every baker's shop, storehouse, or other building where any bread is or shall be baked, stored, or deposited or offered for sale, and to inspect and examine all bread found therein, and also to stop, detain, and examine, in any part of said city, any person or persons, wagons or other carriages, carrying any loaf of bread for the purpose of sale, and weigh the same, and determine whether the same are in violation of the true intent and meaning of this chapter; and if the said inspector shall find any bread not conformable to the directions herein contained, or any part of them, he shall make complaint thereof for the purpose of having such person prosecuted according to law.

"SEC. 6.  No person or persons shall obstruct, or in any manner impede or willfully delay, the said sealer of weights and measures in the execution of his duties under this ordinance, either by refusing him or delaying his entrance or admission into any of the places above mentioned, or refuse or omit to stop their wagon or carriage as aforesaid, whereby the due execution of this ordinance, or any part of it, shall be impeded or obstructed.

"SEC. 7.  Any violation of any of the provisions of this ordinance shall be punished by a fine not to exceed $50 and the costs of prosecution, and the offender may be imprisoned in the Detroit House of Correction until the payment thereof:  *Provided*, always, that the term of such imprisonment shall not exceed the period of six months."

The defendants insist:

1. That matters contained within the body of the ordinance are not within its title.

2. That by the ordinance private property is taken without compensation.

3. That the ordinance abridges the right of the respondents to manufacture loaves of bread of such size or weight as they may deem most salable.

4. That it curtails defendants' business, and places a limitation upon the capacity of respondents to carry on a lawful business.

5. That the ordinance is not within the police powers of the State.

There is no force in the first objection, as the provisions of the ordinance are clearly within the scope of its title. It has been held that the constitutional provisions relating to the title of laws passed by the Legislature do not apply to ordinances enacted by a common council of a city. *People v. Hanrahan*, 75 Mich. 611, 615.

The ordinance does not provide for the taking, seizing, or destruction of short-weight bread. It does prohibit the sale of bread which is deficient in weight. The same objection might be made to ordinances prohibiting the importation of infected rags, or the sale of diseased cattle, or of unsound beef, or of decayed vegetables, or of illuminating oils which are below the standard test, or of watered milk.

In *Wheeler v. Russell*, 17 Mass. 258, it was held that no recovery could be had for the price and value of shingles which were not of the statutory dimensions. In *Eaton v. Kegan*, 114 Mass. 433, it was held that, in view of the statute requiring oats and meal to be sold by the bushel, no recovery could be had for the price and value of those articles when sold by the bag.

It is claimed by defendants that, in order to get a pound of baked bread, they are compelled to put into the oven more than a pound of dough, and that the process of baking reduces the weight, and, when asked what it

is that evaporates, they reply, "Water." But they say the process of baking is not always uniform; that the oven may be too hot, in which case the bread crusts or skins quickly, retaining the moisture, and, again, it may be too cold, in which case the bread dries up, rather than bakes, and, in order to insure a pound loaf, the latter contingency must be provided against and the weight of the dough must always be regulated accordingly; that fermentation is not always regular, and when it reaches a certain point the dough must be put into the oven, without reference to the condition of the oven; that the cutting up of the dough, the weighing of it, and its transfer to the oven is necessarily hurried, and the scales are liable to become clogged or affected by dust.

Notwithstanding all the difficulties suggested by respondents, the evidence shows that the bread inspector has been diligent in the performance of his duties; had frequently visited the several bakeries of defendants, and but one of these defendants has before this time been complained of, and that was 15 years ago; and it is admitted by defendants, not only that the ordinance may be complied with, but that the short-weight bread discovered by the inspector was made for the very purpose of testing the validity of this ordinance, and, after the authorities had caused complaint to be made against defendants, they resumed the former manner of doing business, and made their bread in accordance with the provisions of the ordinance.

Again, it is claimed that a barrel of flour will make 250 loaves of bread, and that it is impossible to distribute an ordinary advance in price of flour over this product; in other words, that the price of a loaf of bread cannot be advanced a fraction of a cent. This difficulty affects the retail dealer more than the wholesaler. It has to be met in the sale of a pound of nails, of a dozen

buttons, or of a paper of needles, as well as in the sale of a loaf of bread. The ordinance does not attempt to regulate the price of the commodity. That is not necessarily fixed with reference to flour at its cheapest price, so that, until the price of flour is reduced until it reaches a point where the reduction may be distributed, the dealer gets the advantage of the reduction, and when it advances above the standard the consumer gets the advantage, until a point is reached where the advance may be added. This fluctuation and these results are ordinary incidents of trade.

The State may institute any reasonable preventive remedy when the frequency of the frauds, or the difficulty experienced by individuals in circumventing them, is so great that no other means will prove efficacious. Tied. Lim. § 89, p. 208.

Bread is an article of general consumption. It is usually sold by the loaf, and the individual consumer, in the majority of cases, buys by the single loaf. Each transaction involves but a few pennies, although the number of individual transactions in a large city reaches each day into the thousands, and the opportunities for fraud are frequent. It would be practically impossible to prevent fraud in the sale of short-weight loaves if the matter was left to the ordinary legal remedy afforded the individual consumer for fraud or deceit. The amount involved would not justify a resort to litigation. Sales are invariably made in loaves of the size of one, two, or four pound packages, and the ordinance simply takes the usual and ordinary packages or loaves into which bread is made, and fixes the standard of weight of each package. It does not prohibit the sale of bread by weight if it overruns, as it is claimed it sometimes does, nor does it prohibit the exaction of an increased price by reason of the additional weight. It does not prohibit the sale

of a half or a quarter or any other fraction of a loaf.

Our statutes not only fix the number of pounds of each of the various commodities that shall constitute a bushel, but they also provide that a "box" or "basket" of peaches shall contain one-third of a bushel, and they fix the size of a "barrel" of fruit, roots, or vegetables, and they may, with equal propriety, fix the weight of a package or loaf of bread.

The police power of a state is not confined to regulations looking to the preservation of life, health, good order, and decency. Laws providing for the detection, and prevention of imposition and fraud, as a general proposition, are free from constitutional objection. Tied. Lim. § 89, p. 208.

The charter of the city of Detroit empowers the common council to "direct and regulate the weight and quantity of bread, the size of the loaf, and the inspecting thereof." The ordinance is clearly within this provision, and it cannot, under the decision in *People v. Armstrong*, 73 Mich. 293, be subjected to the test of reasonableness.

The convictions are affirmed, and the writ dismissed.

The other Justices concurred.