**BERTSCH et al. v. McBRIDE.**

No. 5792.

Circuit Court of Appeals, Sixth Circuit.

May 3, 1932.

As Modified May 13, 1932.

B. M. Corwin, of Grand Rapids, Mich. (Corwin, Norcross & Cook, of Grand Rapids, Mich., on the brief), for appellants.

O. S. Cross, of Holland, Mich. (Charles H. McBride and Diekema, Cross & Ten Cate, all of Holland, Mich., on the brief), for appellee.

Before MOORMAN and HICKS, Circuit Judges, and NEVIN, District Judge.

NEVIN, District Judge.

On January 23, 1929, Fred S. Bertsch was adjudged bankrupt by the District Court of the United States for the Western District of Michigan. On March 5, 1929, Charles H. McBride was duly appointed trustee of the bankrupt's estate. On June 11, 1929, a bill of complaint was filed by the trustee in bankruptcy against appellants to set aside a trust agreement made by the bankrupt previous to his adjudication, with Grand Rapids Trust Company, trustee, as a fraud upon the creditors of the bankrupt. In his bill of complaint, the trustee in bankruptcy alleges, inter alia, as follows: "Your orator further represents that on said 26th day of February, A. D. 1926, and while said bankrupt was engaged in business in the Township of Park, County of Ottawa, and State of Michigan, and while he was indebted to the Holland City

State Bank in a large amount and had other indebtedness, and while he contemplated to continue in business and actually did so continue in business and actually borrowed large amounts of money shortly thereafter and largely extended his operations and constructed new buildings and purchased new equipment, for all of which he is still indebted, his acts in entering into said trust agreement, copy of which is hereto attached and marked Exhibit 'A,' and in thus withdrawing his property from his creditors and in making voluntary provision for himself and his family in said trust agreement, he perpetrated a fraud upon his creditors in impounding away from his creditors his property as a provision for himself and wife and his children and thus perpetrating a fraud upon his creditors." The evidence discloses that on February 26, 1926, while engaged in the business of operating a fruit farm and manufacturing and selling fruit juices, Mr. Bertsch executed the trust agreement in question. By this agreement he conveyed to the trust company, trustee, substantially his entire estate, consisting of real and personal property, of the approximate value of $30,000. He was indebted at the time in the sum of about $11,000. After the execution of the trust agreement, he continued operating the fruit farm and manufacturing and selling fruit juices. He made improvements to his cider mill, and installed new equipment at a cost of about $8,000. He borrowed money from two banks, in the city of Holland, Mich. The bankruptcy schedules show that notes were given to the Holland City State Bank during October and November, 1926, in the amount of $5,400. Other debts were incurred during 1926 on account of obligations due various concerns on account of purchases of lumber, tile, gravel roofing, coal, and other supplies. One of the liabilities scheduled is a judgment of $3,462.03 for the agreed price of bottles purchased by Mr. Bertsch, in 1926, for use in the business. Under the terms of the trust agreement, the trustee is authorized to control and manage all of the property and out of the property to pay Mr. Bertsch and his wife the sum of $100 per month. The trust can be terminated by the trustee or by Mr. Bertsch and his wife, and Mr. J. Arthur Whitworth, a friend named in the trust agreement. All conveyances were made pursuant to the terms of the trust agreement and duly recorded. Substantially all creditors who were in existence on February 26, 1926, had been paid in full prior to the bankruptcy. The question presented in the court below was whether the trustee in bankruptcy may set aside on behalf of subsequent creditors this trust agreement. Upon a consideration of the question, the trial court found in favor of the trustee in bankruptcy, and entered a decree declaring the trust agreement void, as being contrary to the policy of the law and as being a fraud as against the creditors of Fred S. Bertsch, granting the prayer of the complainant that the title to the lands and to the personal property described in the trust agreement be decreed to be in him as trustee in bankruptcy, and for an accounting. On July 26, 1930, a rehearing was granted by the trial court, based upon the claim of defendants that section 5 of Act No. 310 of the Public Acts of Michigan, for the year 1919, is unconstitutional. Subsequently, this claim was overruled and final decree in favor of the trustee in bankruptcy was entered.

The cause comes into this court on an appeal from this final judgment and decree entered by the District Court. On behalf of the appellee, it is claimed that the trust agreement is void because it is contrary to the policy of the law, and also because it is in violation of section 11980 and section 12302, subdivision 6, of the Compiled Laws of the State of Michigan of 1915, and in violation of the Uniform Fraudulent Conveyance Act, being Act No. 310 of the Public Acts of Michigan of 1919, being sections 12003 (1) to 12003 (14), of the Compiled Laws of Michigan, 1922 Supplement. The claims of appellants are grouped under two general heads and are as follows: "1. The Court erred in holding the trust agreement void as to creditors who extended credit, subsequent to the execution of the trust agreement and the recording of the deeds, with full knowledge, either actual or constructive, of the existence of said trust. 2. The Court erred in holding that section 5 of Act No. 310 of the Public Acts of Michigan for the year 1919 (section 12003 (5), Supplement to the Compiled Laws of Michigan of 1922) is a valid enactment, and that the trust agreement violated said act, regardless of any intent to defraud."

The Michigan statute, section 11980, above referred to, provides: "Section 1. All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void, as against the creditors, existing or subsequent, of such person." This statute has been in effect in Michigan since 1857. The statute section 12302 (subdivision 6) provides for a bill of discovery of any property held in trust for him (the judgment debtor), "except where such trust has been created by, or the

fund is held in trust as proceeding from some person other than the defendant. * * *" And the court shall have power to decree payment of the judgment out of any property held in trust for him, except where the trust fund is created by someone other than the judgment debtor. Such statutes in substance have been in force in Michigan since 1846. In addition to the above statutes, the Michigan Legislature in 1919 passed the Uniform Fraudulent Conveyance Act, being Act No. 310, Public Acts of Michigan 1919, sections 5 and 6 of which (Comp. Laws Mich. Supp. 1922, §§ 12003(5), 12003(6), provide as follows: "Sec. 5. Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent. Sec. 6. Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." The Uniform Fraudulent Conveyance Act has been enacted in many States.

It is claimed on behalf of appellants that section 5 is unconstitutional in that it makes a transaction valid when made, illegal at a subsequent date, and thereby impairs the obligation of contracts and takes property without due process of law, in violation of the Fourteenth Amendment. But, as stated by the trial court, the right to dispose of property on such terms as one sees fit and to make contracts in regard thereto is both a liberty and property right, "this freedom of contract however is not an absolute but a qualified right and is subject to reasonable restraint by legislatures in the interest of public welfare. The general principles are discussed and applications thereof are found in C. B. & Q. R. R. Co. v. McGuire, 219 U. S. 549, 568, 31 S. Ct. 259, 55 L. Ed. 328; Rosenthal v. New York, 226 U. S. 260, 33 S. Ct. 27, 57 L. Ed. 212; Schmidinger v. Chicago, 226 U. S. 578, 33 S. Ct. 182, 57 L. Ed. 364; Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224; Lemieux v. Young, 211 U. S. 489, 29 S. Ct. 174, 53 L. Ed. 295; Kidd v. Musselman, 217 U. S. 461, 30 S. Ct. 606, 54 L. Ed. 839; International Harvester Co. v. Missouri, 234 U. S. 199, 34 S. Ct. 859, 58 L. Ed. 1276, 52 L. R. A. (N. S.) 525."

This court is in accord with the views expressed by the trial court to the effect that section 5 of the Uniform Fraudulent Conveyance Act is not unconstitutional and that its provisions are properly applicable in the instant case. In the case at bar, Mr. Bertsch conveyed substantially all of his property in trust and reserved the beneficial use of the property for himself and his family; he continued in possession of the real estate, was in business at the time the trust was executed, and continued in that business. It is conceded by appellants that he owed $11,000 at the time and that he borrowed more money. Appellants deny that the money which he borrowed was used by Mr. Bertsch to "continue" in the business which he was in prior to the execution of the trust agreement. For example, appellants claim that the cider mill "was not built until after the trust agreement was made." The trial court, however, found, and so stated in his opinion, that Mr. Bertsch did, after the execution of the trust agreement, continue "the business of operating the farm and manufacturing fruit juices the same after the execution and delivery of the trust agreement as he did before the agreement was entered into; that he continued living on the farm with his family as he had previously done, and that his bank account was carried in the same way." And this seems to have abundant support in the testimony of Mr. Bertsch himself, for he testified that: "Practically all of the property I had in 1926 I put in the hands of the Trust Company, in trust, under this trust agreement that we have talked about. I then went on and borrowed from the Holland City State Bank about $5,000.00 and from the First State Bank, $3,000.00, which has still to be paid. * * * I haven't paid anything on the First State Bank claim that shows on the schedule; or the $5,400.00, Holland City State Bank. * * * I continued in the manufacture and merchandising of fruit juices after the trust agreement; I was still trying to make cider and still selling it; running the place in the same old way, I mean the farm and business. Doing the best I could; I was living on the place, conducted it the same as I did prior to that date. We carried our personal account at the Holland City State Bank in the same way as we did before; there was no change. * * * We continued to run a truck. I shipped and I bought and I sold."

Under all of the evidence as disclosed by the record in this case, we are not disposed

to differ from the trial court in its conclusion. Under Act No. 310, Public Acts of Michigan 1919, hereinbefore referred to, one cannot convey all of his property in trust for his own benefit or for the benefit of his family and thereafter continue in business and obtain credit, having all the benefits of his property and yet keeping it from the reach of his creditors. Whether such conveyance would be invalid or fraudulent as to subsequent creditors independently of the statute is a question that we need not and do not decide; but cf. Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395; Savage v. Murphy, 34 N. Y. 508, 90 Am. Dec. 733; Mullen v. Wilson, 44 Pa. 413, 84 Am. Dec. 461.

We conclude that the trust agreement in question is in violation of the laws of Michigan, that such an agreement under the facts of the instant case is void as against public policy; and that the judgment of the trial court is correct. It is therefore affirmed.