The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* CHAMPION COATED PAPER CO., CLEVELAND WORSTED MILLS CO., A. W. FENTON CO., CENTRAL ALLOY STEEL CORP., CLEVELAND PLANER CO. (No. 3706)[1]

[1] T. D. 47422.

United States Court of Customs and Patent Appeals, December 3, 1934.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.,* special attorney, of counsel), for the United States.

*Barnes, Richardson* and *Halstead* (*Samuel M. Richardson* of counsel) for appellees.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee, Champion Coated Paper Co.

[Oral argument October 2, 1934, by Mr. Lawrence, Mr. Tompkins, and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Both sides to this controversy have limited the issue to the sole question as to the reasonableness and validity of article 976 of the Customs Regulations of 1923. In view of our conclusion, it is unnecessary to unduly extend this opinion by a recital and statement of many of the details affecting the various protests, notices of intent, etc., which the trial court necessarily was required to deal with, and we will decide the said issue presented without giving any consideration to any other issue which was passed upon in the decision of the trial court.

The appeal involves 11 protests, one or more of which were filed by each of the parties appellee against the action of the collector at the port of Cleveland in refusing to allow drawback under the provisions of section 313 of the Tariff Act of 1922. All the protests having involved the same issue were consolidated for the purpose of decision by the trial court, and, although the decision of all the cases was made in one opinion, the trial court entered separate judgments as to each party litigant. The cases, having been consolidated here for the purposes of appeal, are all contained in one record, and the judgments of the trial court will be reviewed in one decision.

It is conceded in this case that the sole ground for refusing to allow drawback as aforesaid is that no drawback entries or other papers necessary for liquidation were filed within the required time

prescribed by said article 976 of the Customs Regulations of 1923 as amended by T. D. 40530.

That part of said customs regulation which is involved in the decision of this case is as follows:

ART. 976.—*Completion of drawback claims—Entry and certificate of manufacture.*—A drawback entry and certificate of manufacture on Customs Form 7575 shall be filed in duplicate within two years from the date of clearance of the exporting vessel or conveyance. * * *

\* \* \* \* \* \* \*

Claims for drawback not completed within the two years above prescribed, shall be treated as abandoned.

The refusal of the collector to allow drawback was stated in different terms in the collector's answers to the various protests, but, as heretofore stated, it is conceded here, under the sole issue presented, that his refusal to allow the drawback was based solely upon the fact that the claims were treated as abandoned because they were not completed within two years from the date of exportation, which would be the "date of clearance of the exporting vessel or conveyance."

Without discussing the different protests in detail, it is agreed that in the case of the Cleveland Worsted Mills Co., and possibly others of the appellees, it would have been impossible to have filed an allowable claim for drawback within the said two-year period on account of the effect of pending protest proceedings which would necessarily result in the inability of the claimant to ascertain the amount of drawback to be paid or to produce the certificate of importation which certificate, according to article 977 of the Customs Regulations of 1923, will not be issued until after the liquidation of the import entry is made final.

So far as the issue here is concerned, the pertinent portion of said article 977 is as follows:

ART. 977. * * * Certificates of importation shall not be issued until the import entry covering the merchandise to be certified shall have been liquidated and such liquidation made final by operation of law *or acceptance in writing by the importer.* * * * (Italics ours.)

It is also made clear by the record before us and the concessions of the parties herein that as to one or more of the appellees at bar, the above-mentioned conditions which maintained as to the Cleveland Worsted Mills Co. did not maintain as to them, and that nothing remained for them to do after the clearance of the exporting vessel but to file the entry and claim; that there were no pending reappraisement or protest proceedings which would have prevented said appellees from securing certificates of importation and all other necessary facts, papers and documents required for such entry or claim. In this opinion we will refer to the appellees in the class of the Cleveland

Worsted Mills Co. as the first class, and the other appellees last above referred to as the second class.

The appellees of the first class contend that the regulation is unreasonable and invalid as applied to them for the reason that it required them, in the case at bar, to file their entry and claim prior to liquidation, unless they waived the right to prosecute pending proceedings which would affect the amount of duties to be paid.

The appellees of the second class make no such contention as is made by those of the first class and admit frankly that there is no reason why they could not have filed an allowable claim within the two-year period provided by the regulation, and that in order to do so, they would not have been deprived of any of their statutory rights. The appellees of the second class, however, do contend that the regulation is wholly invalid for reasons pointed out by the appellees of the first class, and that if such regulation is invalid as to one, it is invalid as to all, and that the collector was not justified in denying their claims for drawback by virtue of their failure to comply with an invalid regulation.

The Government rests its case largely upon our decision in the case of *United States* v. *Gruen Watch Co.*, 21 C. C. P. A. (Customs) 225, T. D. 46761, which, by the way, was not decided by this court prior to the decision of the trial court in the instant case. In a very extended supplemental brief, the Government has, however, brought to the court's attention numerous considerations which it had not discussed in its original brief or in oral argument. The Government points out that an importer cannot receive drawback and at the same time receive a refund of duties under protest, and states "It necessarily follows that the exportation of such merchandise, accompanied by a claim for drawback, in effect extinguishes the rights under the protest", and argues, therefore, that under said article 977, the importer, by filing an "acceptance in writing" may make the liquidation final and thus be enabled to comply with said regulation 976 within the two-year period.

We have given much thought to this phase of the case. We cannot believe that by the enactment of section 313, Tariff Act of 1922, the drawback section, Congress intended that anyone entitled to protest or appeal to reappraisement should be required to waive any rights he might have in the prosecution of such proceedings in order that he might secure a certificate of importation, which was essential to the completion of the drawback claim. The Government's suggestion that this is the normal way of transacting this kind of business, and that as a matter of practice anyone who exports and claims drawback abandons reappraisement or protest proceedings, does not seem to require the conclusion that said section 313 necessarily contemplated

this result. It is true enough that in most instances there would not be much of a financial interest left to prompt litigation after 99 per centum of the duty had been refunded; nevertheless, it is quite apparent that 1 per centum or a certain part of such 1 per centum might properly be the subject of litigation, and which, under the regulations above quoted, might have to be abandoned or waived before the drawback entries could be filed. The fact that 1 per centum or a part of 1 per centum of the duty paid would be a small part of the whole amount of duty paid, in our view, does not minimize the importance of the principle involved.

In the consideration of the *Gruen Watch Co.* case, *supra*, this court had before it its decision in the case of *United States* v. *R. H. Comey Brooklyn Co.*, 16 Ct. Cust. Appls. 248, T. D. 42843. In that case a regulation required that the merchandise should be *identified for exportation and drawback within three years from the date the imported merchandise was entered for consumption or withdrawn from warehouse.* We held that the regulation was a statute of limitations and unauthorized by Congress, and that the same was invalid.

The regulation under consideration at bar is of a very different character, as was pointed out in the *Gruen Watch Co.* case, *supra*. It requires that the drawback entry, etc., *shall be filed within two years of the date of the clearance of the exporting vessel.* In the *Gruen Watch Co.* case, *supra*, we said:

If the regulation should be looked upon as a statute of limitations, the provision for which was a prerogative of the legislative body rather than an administrative duty, procedural in nature, authorized by Congress, we can see no escape from the correctness of the conclusion of the majority of the court below, and of the contentions of the appellee herein.

We are inclined to believe, for reasons hereinafter set out, that the regulation, insofar as the two-year limitation is concerned, is not in the nature of a statute of limitations such as was the regulation involved in the *Comey Brooklyn Co.* case, *supra*, but on the contrary we conclude that it was an administrative act fully justified and authorized by Congress for the purpose of establishing an orderly and proper procedure in connection with the administration and carrying out of customs laws.

\*　　\*　　\*　　\*　　\*　　\*　　\*

In the case at bar, the right of the importer to export its goods and have them identified and thus establish the basis of its claim for drawback is in no wise affected by the two-year provision under discussion. The regulation provides that after all said steps have been taken, the importer must, within two years from the date of the clearance of the exporting vessel, file the entry, together with certain papers, all of which affords information requisite for the proper liquidating of the entry. It seems to us that the filing of the entry and papers such as is required by the regulation is similar in some respects to presenting the details of a bill for payment. That the two-year period is a reasonable length of time in which to file such entry is not questioned.

In that case it appeared that there was nothing remaining to be done on the part of the claimant but to file his entry, and that the

claimant's failure to file within the two-year period was in no sense due to any cause beyond his control. Basing our decision largely on this court's holding in the case of *MacNichol Packing Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 400, T. D. 42050, we held that the regulation was not in the nature of a statute of limitations. In the *Gruen Watch Co.* case, the court, in conclusion, said:

* * * In the *Comey* case, the court said that there was no manufacturing and exporting of merchandise involved in the regulation in the *MacNichol* case. That is true in the instant case. The regulation here does not involve a requirement that the goods must be manufactured from imported goods and *exported* within a given time. If we were sound in the *MacNichol* case in the view that a regulation having in mind an accounting between the importer and the Government was valid when it required the filing of proof within one year, the regulation at bar, which fixes a two-year period within which to file the entry, should be held valid. If the court reached the right conclusion in the *MacNichol Packing Co.* case, and we are sure that it did, we see no escape from the conclusion that we must hold the regulation at bar a valid exercise of the authority conferred by Congress, and we so hold.

It is easy to see that the question presented here involves an entirely different statement of facts than that involved in the decision of the *Gruen Watch Co.* case, *supra*. No pending protest proceedings were there involved, and our attention was not called to the fact that the pendency of such proceedings might make impossible a compliance with the regulations. That phase of the situation was not considered by the court. The present record, however, shows conclusively that at least some of the claims for drawback at bar were refused by the collector, notwithstanding the fact that at the time of the expiration of said period of two years there were pending protest proceedings which made impossible the securing of a certificate of importation which was required to be filed with the claim.

It may be suggested that it should be held that the regulation was not meant to apply where circumstances such as are herein detailed prevent the filing of the proper drawback claim, but that it is valid and should be applied to circumstances like those in the case of the *Gruen Watch Co.*, *supra*, and the circumstances which apply to the second class of appellees herein. In our judgment this would be writing a new regulation. The regulation in definite terms states that the drawback entries, etc., shall be filed within two years from the date of the clearance of the exporting vessel, and in view of the considerations above enumerated we must conclude that said regulation in respect to said time limit is in effect a statute of limitations, unauthorized by law and is unreasonable and invalid.

It is also suggested that those appellees here involved who belong to the second class referred to, have no right to complain or raise the question of the reasonableness of the regulation until the hardships affect them, and that as to them the regulation should be held to be

valid and that their failure to comply with it should be regarded as a complete bar to their being allowed the drawback in question, as was held in the *Gruen Watch Co.* case, *supra*.

The case of *Lemieux* v. *Young*, 211 U. S. 489, 493, has been brought to our attention. In that case the following holding was made by the Supreme Court of the United States:

But "a possible application to extreme cases" is not the test of reasonableness of public rules and regulations. *Commonwealth* v. *Plaisted*, 148 Mass. 375.

We are of the opinion that the application of the regulation to the claims of the appellees of the first class can in no sense be regarded as an application to an extreme case. We have found no legal authority which would justify a holding that any of the appellees in this consolidated appeal did not have the right to question the reasonableness of the regulation, or that would justify a holding that a regulation invalid to one class of persons affected by it is not invalid as to all others who are affected by its terms.

We, therefore, hold that the said regulation in the respects challenged here is invalid, and the failure to comply with the terms of the same was no justifiable reason for refusal to allow the drawback claims in controversy.

We think it entirely proper to here refer to another regrettable matter which is of record before us and which has been called to our attention. The decision of the trial court, consisting of Judge Sullivan's opinion, the opinion of Judge Brown concurring with Judge Sullivan's opinion, and the dissenting opinion by Judge McClelland, takes up more than 20 pages of the printed record. A very large portion of the opinions is devoted to a discussion of the propriety of receiving stipulated facts in lieu of a requirement of proof of such facts. In oral argument here, the fear was expressed that the wrong conclusion might be drawn with respect to the motives that might or did prompt the parties litigant in agreeing upon said stipulated facts.

We have examined the record with respect to this subject matter and regardless of what inferences might be drawn from certain statements found therein, we doubt very much if anything contained in the record before us was intended to directly or indirectly impugn the motives or question the professional integrity of anyone with respect to the stipulation of facts. We are in accord with the expression of the majority of the trial court that it is not only entirely proper to accept stipulations of counsel as to the facts involved in a case, but that, in most instances, in customs jurisprudence, it is a very desirable practice. On this phase of the case we can only reiterate what we have said elsewhere. See *North American Mercantile Co.* v. *United States*, 18 C. C. P. A. (Customs) 74, T. D. 44030, and

*Pacific Trading Co.* v. *United States*, 19 C. C. P. A. (Customs) 361, T. D. 45508.

In the *North American Mercantile Co.* case, *supra*, we said:

Finally, upon the question of the stipulation, we think it not improper to say that the members of the customs bar, including the Government attorneys, are as a rule attorneys of the highest integrity and established ability. It is to the interest of the public that customs litigation should be expedited in all proper ways, and the courts should adopt a liberal attitude with respect to stipulations, with the presumption that they are made in good faith and with a view of protecting the interests of both sides of the controversy. Should the contrarv appear in any given case, it is of course the duty of the court to reject the stipulation. Where the subject matter of a stipulation is as to facts, incidental question of law relating to relevancy, arising in a determination by counsel of the facts to be presented to the court, should not cause the rejection of a stipulation.

The stipulation in question should have been accepted in full by the Customs Court and is accepted by us.

In the case of *Pacific Trading Co.* v. *United States, supra,* we said:

In the interest of saving time and expense, it is often desirable, and clearly within the rights of the parties litigant, to agree by stipulation to the elimination of what might otherwise be controverted issues. This is frequently done, and we think properly so, by agreeing as to ultimate facts which are controlling of such issues. We know of no good reason why stipulations entered into by an attorney representing the United States Government in a lawsuit should be treated by the court differently from stipulations entered into by attorneys representing other clients. It seems to us that to hold otherwise would subject the Government to an unwarranted handicap. See *United States* v. *Zucca & Co., supra* [11 Ct. Cust. Appls. 167, T. D. 38959]. If attorneys representing the Government are to be so restricted, it is within the province of Congress so to provide by appropriate legislation, and the courts are not warranted in usurping such prerogatives of the legislature.

No error is found in the trial court's judgments holding said regulation 976 invalid and sustaining the protests, and its judgment as to each of the parties involved in this appeal should be and is *affirmed*