(39 App. Div. 432.)

## CITY OF BUFFALO v. COLLINS BAKING CO.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

MUNICIPALITIES — REGULATING WEIGHT OF BREAD — INVASION OF PRIVATE RIGHTS.

An ordinance regulating the weight of bakers' bread is void, as being an unreasonable invasion of the right to engage in a lawful business.

Appeal from municipal court of Buffalo.

Action by the city of Buffalo against the Collins Baking Company. From a judgment for defendant (53 N. Y. Supp. 968), plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLEN-NAN, and SPRING, JJ

Frank W. Spitzmiller, for appellant.

J. McMitchell, for respondent.

SPRING, J. The common council of the city of Buffalo, which is its lawmaking power, passed the following ordinance:

"Sec. 6. All bread baked by any baker to whom a license or permit is issued, as hereinbefore provided, and all bread baked at the place mentioned in such license or permit, and all bread sold or offered for sale in the city of Buffalo, wherever baked, shall be made into loaves weighing not less than one and one-half pounds each. No bread shall be baked, sold or offered for sale contrary to the provisions of this section; and any person violating the provisions of this section shall be liable to the penalty hereinafter prescribed.

"Sec. 7. The word 'baker' as used in this chapter, shall include any person engaged in the business of baking biscuit, bread, pie or cake for sale, and the word 'person' as used in this chapter, shall include persons, firms, associations and corporations.

"Sec. 8. Any person violating any of the provisions of this chapter shall be punishable by a fine of not less than five dollars, nor more than fifty dollars."

The defendant is a corporation located in the city of Buffalo, and is extensively engaged in making and selling bread. It has carried on this business for six years, and during that time has manufactured bread into loaves, each weighing one pound, which is below the minimum weight provided for in section 6, above. On the 13th day of September, 1898, the defendant, at its place of business, in the usual manner, and for the usual price of five cents, sold to one Farron a loaf of bread weighing one pound. The bread sold bore a patriotically colored label, conspicuously stating the name of the maker, and the weight and price of the bread. Suit was brought to recover the penalty prescribed by the ordinance. The quality of the bread was wholesome, and it is not claimed by the counsel for the respondent that it was deficient in that respect.

There has been much controversy as to the extent to which the local lawmaking power can go in restraining and interfering with trade, in the exercise of the police power vested in it; but it is now quite well settled that the restriction or proscription sought to be made must be reasonable in protecting "the lives, health, comfort and property of its citizens." City of Rochester v. West, 29 App. Div. 125, 51 N. Y. Supp. 482, Dill. Mun. Corp. pars. 319, 320. The right of the individual to engage in any lawful calling is guarantied to him, and any oppressive exaction, or any unreasonable restraint upon the utmost liberty of business growth and advancement, is in contravention of this fundamental law of the land. Ford v. Oil Co., 32 App. Div. 596–600, 53 N. Y. Supp. 48, et seq.; People v. Gillson, 109 N. Y. 389–398, 17 N. E. 343, et seq.; Slaughter-House Cases, 16 Wall. 36–106; People v. Marx, 99 N. Y. 377, 2 N. E. 29.

To quote from the opinion of Judge Rapallo in the case last cited, at page 386, 99 N. Y., and page 33, 2 N. E.:

"These constitutional safeguards have been so thoroughly discussed in recent cases that it would be superfluous to do more than refer to the conclusions which have been reached, bearing upon the question now under consideration. Among these no proposition is now more firmly settled than that it

is one of the fundamental rights and privileges of every American citizen to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see fit."

And from Judge Peckham in People v. Gillson, at page 399, 109 N. Y., and page 345, 17 N. E.:

"'Liberty,' in its broad sense, as understood in this country, means the right not only of freedom from servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation."

And from Judge Field in the Slaughter-House Cases, at page 87, 16 Wall.:

"Under the pretense of prescribing a police regulation, the state cannot be permitted to encroach upon any of the just rights of the citizen, which the constitution intended to secure against abridgment."

The difficulty is, in a particular case, to determine where the ordinance in the restraint of trade transcends the power of the legislative body by its infringement upon the rights of the individual. If the purpose to be obtained is for the public health or comfort, or the public weal generally, then the rights of the individual must yield to the common good. In this case no good to the public is apparent. Bread of the same composition, weighing one pound, is equally wholesome as a loaf half a pound larger. There is no advantage to the public on the score of economy, as the price is ratably the same. There is no pretense of any attempt to cheat in the weight, and no question of inspection is involved. There is a demand for loaves of bread of one pound weight. The sales of this size made by defendant have averaged about 200 loaves each day. It is therefore engaged in a proper business,—supplying the needs of people daily, at a confessedly moderate charge, and without any criticism as to the quality of the food furnished. There is no necessity for the common council to prohibit it from carrying on this trade. Its endeavor to do so is an unreasonable proscription of a legitimate calling. Enforcement of the ordinance will tend to lessen the value of the property invested in the enterprise, to diminish the number of its employés, and to decrease its sales, and with no benefit accruing to the people of the city of Buffalo.

The judgment of the municipal court is affirmed, with costs. All concur.